## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAM L. CARTER, derivatively on behalf of GULFPORT ENERGY CORP., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DAVID M. WOOD, KERI CROWELL, QUENTIN R. HICKS, DAVID L. HOUSTON, BEN T. MORRIS, C. DOUG JOHNSON, DEBORAH G. ADAMS, and PAUL D. WESTERMAN, | ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| - and - | ) ) |
| GULFPORT ENERGY CORP., | ) ) |
| Nominal Defendant. | ) ) |

C.A. No. _____-_____

**JURY TRIAL DEMANDED**

### VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT

Plaintiff Sam L. Carter ("Plaintiff" or "Carter"), by and through his undersigned counsel, brings this derivative complaint for the benefit of nominal defendant Gulfport Energy Corp. ("Gulfport" or the "Company"), against Individual Defendants David M. Wood ("Wood"), Keri Crowell ("Crowell"), Quentin R. Hicks ("Hicks"), David L. Houston ("Houston"), Ben T. Morris ("Morris"), C. Doug Johnson ("Johnson"), Deborah G. Adams ("Adams"), and Paul D. Westerman ("Westerman") (collectively, the "Individual Defendants," and together with Gulfport, the "Defendants") for breaches of their non-exculpable fiduciary duties and other serious misconduct.

– 1 –

Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by Gulfport with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## NATURE AND SUMMARY OF THE ACTION

1.      This stockholder derivative action is brought for the benefit of Gulfport, based on wrongdoing committed from January 2019 through the present (the "Relevant Period") by the Individual Defendants, who are certain of Gulfport's current and/or former directors and officers.

2.      Gulfport, a Delaware corporation, engages in the exploration, development, acquisition, and production of natural gas, crude oil, and natural gas liquids in the United States.

3.      This action is based on breaches of fiduciary duty by the Individual Defendants, including a series of materially false and misleading statements issued by the Individual Defendants during the Relevant Period regarding the Company's business and operations.  Specifically, the Individual Defendants issued false and/or misleading statements and/or failed to disclose that: (i) a material weakness existed

in Gulfport's internal controls over financial reporting; (ii) accordingly, Gulfport's disclosure controls and procedures were ineffective; (iii) as a result, Gulfport's financial statements contained multiple misstatements; and (iv) as a result, the Company's public statements were materially false and misleading during the Relevant Period.

4.      On February 27, 2020, after the market closed, the Individual Defendants caused Gulfport to disclose in a Quarterly Report on Form 10-Q filed with the SEC that the Company's previously issued financial statements for the three and nine month periods ended September 30, 2019 "should no longer be relied upon due to material misstatements."  This disclosure stated, in relevant part:

> [I]n the course of preparing the consolidated financial statements for the year ended December 31, 2019, the Company identified a misstatement of its depreciation, depletion and amortization and impairment of oil and gas properties as of September 30, 2019 of approximately $554 million ($436 million net of the tax benefit) related to unrecorded transfers of its unevaluated oil and natural gas properties into the amortization base. This error impacted the related calculations of the Company's depreciation, depletion and amortization and impairment of oil and natural gas properties for the three and nine month periods ended September 2019. Net (loss) income and income tax benefit have also been impacted.

5.      The Individual Defendants further disclosed in a Current Report on Form 8-K filed with the SEC on February 27, 2020 that "the Company has reassessed its conclusions regarding its disclosure controls and procedures as of September 30, 2019 in light of the misstatements," and, "[a]s a result, the Company has determined

that a material weakness in internal control over financial reporting existed as of September 30, 2019, and therefore the Company has concluded that its disclosure controls and procedures as of September 30, 2019 were not effective."

6.      On this news, Gulfport's stock price fell by nearly 9%, to close at $0.82 per share on Friday, February 28, 2020.  The Company's stock price continued to drop thereafter, closing at $0.65 per share on Monday, March 2, 2020, the first day of trading following the February 28, 2020 decline.

7.      As alleged further herein, there is reason to doubt the independence and/or disinterestedness of at least half of the current members of the Board, and accordingly pre-suit demand on the Board is futile and this derivative action against the Individual Defendants for the benefit of the Company should proceed.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between Plaintiff and Defendants and because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because nominal defendant Gulfport is incorporated under Delaware state law and many of the acts and practices complained of herein occurred in this District.

10.      The Court has jurisdiction over each defendant because each

defendant is either a corporation that does sufficient business in this District or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this court permissible under traditional notions of fair play and substantial justice.

11.     In connection with the acts and conduct alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities exchanges and markets.

## PARTIES

**Plaintiff**

12.     Plaintiff is a current stockholder of Gulfport common stock and has continuously held Gulfport common stock since 2018. Plaintiff is a citizen of Missouri.

**Nominal Defendant**

13.     Nominal Defendant Gulfport is a Delaware corporation which maintains its corporate headquarters in Oklahoma City, Oklahoma.  Gulfport's common stock trades on the NASDAQ exchange under the ticker symbol "GPOR." According to its public filings, Gulfport engages in the exploration, development, acquisition, and production of natural gas, crude oil, and natural gas liquids in the

United States.

**Individual Defendants**

14.     Defendant Wood has served as President and Chief Executive Officer ("CEO") of the Company, and as a member of its Board of Directors (the "Board"), since December 2018.  Upon information and belief, defendant Wood is a citizen of Oklahoma.

15.     Defendant Crowell joined the Company in 2005 and served as its Chief Financial Officer ("CFO") and Secretary from 2017 until her resignation, which was announced publicly in August 2019.   Upon information and belief, defendant Crowell is a citizen of Oklahoma.

16.     Defendant Hicks has served as the Company's Executive Vice President and CFO since August 2019.  Upon information and belief, defendant Hicks is a citizen of Oklahoma.

17.     Defendant Houston has served as a director of the Company since 1998 and as Chairman of the Board since 2013.  Upon information and belief, defendant Houston is a citizen of Oklahoma.

18.     Defendant Morris has served as a director of the Company since 2014. During the Relevant Period, defendant Morris previously served as a member of the Board's Audit Committee (the "Audit Committee").  Upon information and belief, defendant Morris is a citizen of Texas.

19.     Defendant Johnson has served as a director of the Company since 2015 and has served during the Relevant Period as Chairman of the Audit Committee. Before joining the Board, starting in 1981, defendant Johnson served in various roles at Phillips 66, a publicly traded company engaged in mid-stream, chemicals, and refining, and its predecessors Phillips Petroleum Co. and ConocoPhillips Co. Among other things, defendant Johnson served as Vice President, Controller and Principal Accounting Officer of Phillips 66 from April 2012 until his retirement on December 31, 2014.  During that same time period, defendant Johnson also served as Vice President, Controller and Principal Accounting Officer of Phillips 66 Partners GP LLC, the general partner of Phillips 66 Partners LP, a publicly traded pipeline subsidiary of Phillips 66.  Upon information and belief, defendant Johnson is a citizen of Texas.

20.     Defendant Adams has served as a director of the Company since March 2018.  During the Relevant Period, defendant Adams previously served as a member of the Audit Committee.  Before joining the Board, defendant Adams served as Senior Vice President of Health and Safety, Project and Procurement of Phillips 66 from May 2014 until her retirement in October 2016.  Prior to that, from 2008 through May 2014, defendant Adams served as President of Transportation for Phillips 66 and ConocoPhillips.  Upon information and belief, defendant Adams is a citizen of Texas.

21.     Defendant Westerman has served as a director of the Company since October 2017.  During the Relevant Period, defendant Westerman served and continues to serve as a member of the Audit Committee.  Upon information and belief, defendant Westerman is a citizen of Texas.

22.     Defendants Wood, Houston, Morris, Johnson, Adams, and Westerman, each of whom is a current member of the Board, are collectively referred to herein as the "Director Defendants."

23.     Defendants Morris, Johnson, Adams, and Westerman, each of whom served on the Audit Committee for some or all of the Relevant Period, are collectively referred to herein as the "Audit Committee Defendants."

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

24.     Each Individual Defendant, by virtue of his/her position as a director and/or officer, owed to Gulfport and to its stockholders the fiduciary duties of loyalty and care.  The Director Defendants were, and are, required to act in furtherance of the best interests of Gulfport and its stockholders so as to benefit all stockholders equally and not in furtherance of their personal interests or benefit.

25.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Gulfport, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial, and directorial positions with

Gulfport, each Individual Defendant had knowledge of material non-public information regarding the Company.

26.     To discharge their duties, the officers and directors of Gulfport were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company. By virtue of such duties, the officers and directors of Gulfport were required to, among other things:

a.  Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

b.  Exercise good faith to ensure that the Company was operated in a diligent, honest, and prudent manner and complied with all applicable federal and state laws, rules, regulations, and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

c.  Exercise good faith to ensure that the Company's communications with the public and with stockholders are made with due candor in a timely and complete fashion; and

d.  When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

27.     In addition, the Audit Committee Defendants served as members of the Audit Committee for some or all of the Relevant Period.  Pursuant to Gulfport's Audit Committee Charter, the Audit Committee Defendants were specifically charged with oversight of the accounting and financial reporting processes of the Company and the audits of the Company's financial statements.

28.     In that regard, per the Audit Committee Charter, the Audit Committee Defendants were duty-bound to assist the Board in monitoring: (i) the Company's accounting, auditing and financial reporting processes generally, including the qualifications, independence and performance of the Company's independent auditor; (ii) the integrity of the Company's financial statements; (iii) the Company's systems of internal controls regarding finance and accounting; and (iv) the Company's risk management and compliance with legal and regulatory requirements.

29.     Other specific duties of the Audit Committee Defendants, per Gulfport's Audit Committee Charter, include:

- Reviewing and discussing with management and the independent auditor the Company's quarterly financial statements prior to the filing of the Company's Form 10-Q, including disclosures made in Management's Discussion and Analysis of Financial Conditions and the results of the independent auditor's review of the quarterly financial statements;

- Discussing with management and the independent auditor significant financial reporting issues and judgments made in connection with the preparation of the Company's financial statements, including any significant changes in the Company's selection or application of accounting principles, and the judgments of each of management and the independent auditor as to the quality and appropriateness of the Company's accounting principles as applied in its financial reporting;

- Reviewing and discussing with management and the independent auditor management's report on internal control over financial reporting and the independent auditor's attestation of the Company's internal control over financial reporting prior to the filing of the Company's Form 10-K;

- Reviewing and discussing with management and the Company's independent auditor the Company's earnings press releases, including the use of "pro forma" or "adjusted" non-GAAP information, as well as financial information and earnings guidance provided to analysts and rating agencies. Such discussion may be done generally (consisting of discussing the types of information to be disclosed and the types of presentations to be made) and the Committee need not discuss in advance each earnings release or each instance in which the Company may provide earnings guidance;

- Reviewing and discussing with management and the independent auditor any major issues as to the adequacy and effectiveness of the Company's internal controls, including any significant deficiencies or material weaknesses in the design or operation of, and any material changes in, the Company's internal controls and any special audit steps adopted in light of material control deficiencies and the adequacy of disclosures about changes in internal control over financial reporting;

- Reviewing disclosures made to the Committee by the Company's Chief Executive Officer and Chief Financial Officer during their certification process for the Form 10-K and Form 10-Q about any significant deficiencies in the design or operation of internal control over financial reporting or material weaknesses therein and any fraud involving management or other employees who have a significant role in the Company's internal control over financial reporting;

- Reviewing and overseeing policies and procedures that the Company has implemented regarding compliance with applicable federal, state and local laws and regulations and with the Company's Code of Business Conduct and Ethics; and

- Monitoring compliance with the Company's Code of Business Conduct and Ethics and establishing and overseeing procedures for the receipt,

retention and treatment of complaints received by the Company regarding accounting, internal accounting controls or auditing matters, and the confidential, anonymous submission by employees of concerns regarding questionable accounting or auditing matters.

30.     The Company's Code of Business Conduct and Ethics (the "Code of Conduct") applies to all employees of the Company, including all executive officers and all members of the Board.  The Code of Conduct provides, among other things, that it is the Company's policy that the information in its public communications, including all SEC filings, be full, fair, accurate, timely and understandable, and that all employees and directors who are involved in the disclosure process are responsible for acting in furtherance of this policy.  In addition, any employee or director who has a supervisory role in the Company's disclosure process has an obligation to discharge his or her responsibilities diligently.

### THE INDIVIDUAL DEFENDANTS' FALSE AND MISLEADING STATEMENTS DURING THE RELEVANT PERIOD

31.     According to its public filings, Gulfport engages in the exploration, development, acquisition, and production of natural gas, crude oil, and natural gas liquids in the United States.

32.     On May 3, 2019, the Individual Defendants caused Gulfport to file a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2019 (the "1Q19 10-Q").  In

the 1Q19 10-Q, the Individual Defendants touted the design of the Company's disclosure controls and procedures, stating that the Individual Defendants "have established disclosure controls and procedures that are designed to ensure that information required to be disclosed by us in the reports that we file or submit under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the SEC's rules and forms," and that "[t]he disclosure controls and procedures are also intended to ensure that such information is accumulated and communicated to management, including our [CEO] and President and our [CFO], as appropriate to allow timely decisions regarding required disclosures."

33.     In the 1Q19 10-Q, the Individual Defendants also touted the purported effectiveness of Gulfport's disclosure controls and procedures, representing that, "[a]s of March 31, 2019, an evaluation was performed under the supervision and with the participation of management, including our [CEO] and President and our [CFO], of the effectiveness of the design and operation of our disclosure controls and procedures," and that, "[b]ased upon [the Individual Defendants'] evaluation, our [CEO] and President and our [CFO] have concluded that, as of March 31, 2019, our disclosure controls and procedures are effective."

34.     Additionally, the 1Q19 10-Q stated that "[t]here have not been any changes in our internal control over financial reporting that occurred during our last fiscal quarter that have materially affected, or are reasonably likely to materially

affect, internal controls over financial reporting."

35.     Moreover, the Individual Defendants caused certifications to be submitted pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") as exhibits to the 1Q19 10-Q, which were signed by Defendants Wood and Crowell, and certified that "the [1Q19 10-Q] fully complies with the requirements of Section 13 (a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a) or 78o(d))" and that "the information contained in the [1Q19 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

36.     On August 2, 2019, the Individual Defendants caused Gulfport to file a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2019 (the "2Q19 10-Q"). The 2Q19 10-Q contained substantively the same representations as the 1Q19 10-Q referenced above, which touted the design of the Company's disclosure controls and procedures, the effectiveness of those disclosure controls and procedures, and the lack of any changes to the Company's internal control over financial reporting.

37.     The Individual Defendants also caused SOX certifications to be submitted as exhibits to the 2Q19 10-Q, signed by Defendants Wood and Crowell, which were substantively identical to the SOX certifications submitted as exhibits to the 1Q19 10-Q as referenced above, certifying the reliability of the financial statements to which the exhibits were appended.

38.     On November 1, 2019, the Individual Defendants caused Gulfport to file a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended September 30, 2019 (the "3Q19 10-Q"). In the 3Q19 10-Q, the Individual Defendants reported depreciation, depletion and amortization of $145.49 million and $388.87 million for the three and nine month periods ended September 30, 2019, respectively; impairment of oil and natural gas properties of $35.65 million for both the three and nine month periods ended September 30, 2019; a net loss of $48.75 million and net income of $248.45 million for the three and nine month periods ended September 30, 2019, respectively; and an income tax benefit of $26.52 million and $205.85 million for the three and nine month periods ended September 30, 2019, respectively.

39.     The 3Q19 10-Q also contained substantively the same representations as the 1Q19 10-Q referenced above, which touted the design of the Company's disclosure controls and procedures, the effectiveness of those disclosure controls and procedures, and the lack of any changes to the Company's internal control over financial reporting.

40.     Moreover, the Individual Defendants caused SOX certifications to be submitted as exhibits to the 3Q19 10-Q, signed by Defendants Wood and Hicks, which were substantively identical to those referenced in connection with the 1Q19 10-Q referenced above, certifying the reliability of the financial statements to which

the exhibits were appended.

41.    The statements referenced above were materially false and misleading because the Individual Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies.  Specifically, the Individual Defendants made false and/or misleading statements and/or failed to disclose that: (i) a material weakness existed in Gulfport's internal control over financial reporting; (ii) accordingly, Gulfport's disclosure controls and procedures were ineffective; (iii) as a result, Gulfport's financial statements contained multiple misstatements; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

## **THE TRUTH EMERGES**

42.    On February 27, 2020, during after-market hours, the Individual Defendants caused Gulfport to disclose in a Quarterly Report on Form 10-Q filed with the SEC that its previously issued financial statements for the three and nine month periods ended September 30, 2019, "should no longer be relied upon due to material misstatements."  The Individual Defendants stated, in relevant part:

> [I]n the course of preparing the consolidated financial statements for the year ended December 31, 2019, the Company identified a misstatement of its depreciation, depletion and amortization and impairment of oil and gas properties as of September 30, 2019 of approximately $554 million ($436 million net of the tax benefit) related

– 17 –

to unrecorded transfers of its unevaluated oil and natural gas properties into the amortization base. This error impacted the related calculations of the Company's depreciation, depletion and amortization and impairment of oil and natural gas properties for the three and nine month periods ended September 2019. Net (loss) income and income tax (benefit) expense have also been impacted.

43.     The Individual Defendants further stated in a Current Report on Form 8-K filed with the SEC on February 27, 2020 that "the Company has reassessed its conclusions regarding its disclosure controls and procedures as of September 30, 2019 in light of the misstatements," and, "[a]s a result, the Company has determined that a material weakness in internal control over financial reporting existed as of September 30, 2019, and therefore the Company has concluded that its disclosure controls and procedures as of September 30, 2019 were not effective."

44.     On this news, Gulfport's stock price fell by nearly 9%, to close at $0.82 per share on Friday, February 28, 2020.  The Company's stock price continued to drop thereafter, closing at $0.65 per share on Monday, March 2, 2020, the first day of trading following the February 28, 2020 decline.

## DERIVATIVE ALLEGATIONS

45.     Plaintiff brings this action derivatively in the right and for the benefit of Gulfport to redress injuries suffered, and to be suffered, by Gulfport as a direct result of breaches of fiduciary duty and other serious misconduct by the Individual Defendants.

46.     Gulfport is named as a nominal defendant solely in a derivative

capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

47.    Plaintiff will adequately and fairly represent the interests of Gulfport in enforcing and prosecuting its rights.

48.    Plaintiff has continuously been a stockholder of Gulfport at all times relevant to the wrongdoing complained of and is a current Gulfport stockholder.

## DEMAND FUTILITY ALLEGATIONS

49.    Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

50.    A pre-suit demand on the Board of Gulfport is futile and, therefore, excused.  At the time of filing of this action, the Board consists of the following eight directors: the Director Defendants Wood, Houston, Morris, Johnson, Adams, and Westerman, and non-parties Alvin Bledsoe and Valerie Jochen.  Plaintiff only needs to adequately allege demand futility as to at least four of the eight directors on the Board at the time this derivative action was commenced.

51.    Demand is excused as to all six of the Director Defendants because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of their actions in knowingly or recklessly making and/or causing the Company to issue false and misleading statements and omissions of material facts. Moreover, the Director Defendants failed to maintain an adequate system of

oversight, accounting controls and procedures, disclosure controls, and other internal controls, which were necessary to prevent or promptly correct the improper statements made on the Company's behalf.

52.    As a result of the foregoing, the Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and accordingly excused.

53.    Demand on defendant Wood is futile for additional reasons. Specifically, defendant Wood is not an independent director, as Wood's principal professional occupation is his role as President and CEO of the Company.  Indeed, the Board admits that defendant Wood is not an independent director in the Company's own public filings.  Defendant Wood was ultimately responsible for all of the false and misleading SEC filings issued during the Relevant Period, which he signed and/or signed SOX certifications for.  Accordingly, there is reason to doubt that Wood is independent and that he is disinterested, and demand upon defendant Wood was not required.

54.    Demand on the Audit Committee Defendants -- Morris, Johnson, Adams, and Westerman -- is also futile in light of their conduct during some or all of the Relevant Period as members of the Audit Committee.  In connection with their roles as Audit Committee members, defendants Morris, Johnson, Adams, and Westerman were specifically charged with oversight of the accounting and financial

reporting processes of the Company, the integrity of the Company's financial statements, the Company's systems of internal controls regarding finance and accounting, and the Company's risk management and compliance with legal and regulatory requirements.  In light of their public admissions on February 27, 2020 that during the Relevant Period, a material weakness existed in Gulfport's internal control over financial reporting, that Gulfport's disclosure controls and procedures were ineffective, and that as a result, Gulfport's financial statements contained multiple misstatements, it is reasonable to infer that all four of the Audit Committee Defendants failed to carry out their obligations as members of the Audit Committee, in violation of their non-exculpable fiduciary duties of loyalty and good faith.  Each of them faces a substantial likelihood of liability, and accordingly pre-suit demand upon Morris, Johnson, Adams, and Westerman is excused.

55.    Demand as to defendants Adams and Johnson is further excused because there is reason to doubt their independence based on their longstanding business relationship with one another.  As members of the Audit Committee during some or all the Relevant Period (and in the case of defendant Johnson, as the Chairman of the Audit Committee), the conduct of defendants Adams and Johnson is squarely at issue in this derivative action.  Even putting aside that they each face a substantial likelihood of liability as alleged above, there is reason to doubt that defendants Adams and Johnson are capable of considering a shareholder demand to

take action against one another independently.  As alleged herein, prior to joining the Board, defendants Johnson and Adams worked closely together for many years in their respective principal professional occupations at Phillips 66 and related business entities.  Johnson joined the Board in 2015, and thereafter, Johnson facilitated the appointment of Adams to the Board in 2018.  Given the foregoing mutually beneficial business relationships that have been ongoing for years, and their affinity for one another, there is reason to doubt that defendants Johnson and Adams are capable of impartially considering a demand to sue one another.  Further, there is reasonable doubt that they could impartially consider a demand to sue the remaining Individual Defendants because the misconduct undertaken by those individuals is substantially similar to their own (and each other's) misconduct. Accordingly, any suit against those individuals would necessarily implicate and expose themselves and each other to liability.  Thus, for this reason as well, any demand on defendants Adams and Johnson would be futile.

56.     In violation of the Code of Conduct, all six of the Director Defendants conducted little, if any, oversight of the Company's internal controls over public reporting and of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public, and facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty and unjust enrichment.  In violation of the Code of Conduct, the

Director Defendants failed to comply with the law. Thus, the Director Defendants face a substantial likelihood of liability and demand is futile.

57.     Gulfport has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Director Defendants have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Gulfport any part of the damages Gulfport has suffered and will continue to suffer. Thus, any demand upon the Director Defendants would be futile.

58.     The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director Defendants can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the current members of the Board face a substantial likelihood of liability, they are self-interested in the actions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Thus, any demand upon the Director Defendants would be futile.

59.     The acts complained of herein constitute violations of fiduciary duties owed by Gulfport officers and directors, and these acts are incapable of ratification.

60.    The Director Defendants may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Gulfport. If there is a directors' and officers' liability insurance policy covering the Director Defendants, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Director Defendants, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Director Defendants were to sue themselves or certain of the officers of Gulfport, there would be no directors' and officers' insurance protection. Accordingly, the Director Defendants cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Director Defendants is futile and, therefore, excused.

61.    If there is no directors' and officers' liability insurance, then the Director Defendants will not cause Gulfport to sue the Individual Defendants named herein. If they did, they would face uninsured individual liability. Accordingly, demand is futile and excused.

62.    For the reasons noted above, there is reason to doubt that at least six of the eight current members of the Board could consider a demand with

disinterestedness and independence. Accordingly, a demand on the Board is futile and excused.

## COUNT I

**Against the Individual Defendants for Breach of Fiduciary Duties**

63.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

64.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Gulfport's business and affairs.

65.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

66.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Gulfport.

67.    In breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls. In further breach of their fiduciary duties owed to Gulfport, the Individual Defendants willfully or recklessly made and/or caused the Company to

make false and misleading statements and omissions of material fact that failed to disclose, *inter alia*, that: (i) a material weakness existed in Gulfport's internal controls over financial reporting; (ii) accordingly, Gulfport's disclosure controls and procedures were ineffective; (iii) as a result, Gulfport's financial statements contained multiple misstatements; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

68.     The Individual Defendants failed to correct and/or caused the Company to fail to rectify any of the wrongs described herein or correct the false and misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

69.     The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them.

70.     The Individual Defendants had actual or constructive knowledge that they had caused the Company to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company's internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that

they caused the Company to fail to maintain adequate internal controls, even though such facts were available to them.

71.     These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

72.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Gulfport has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

73.     Plaintiff on behalf of Gulfport has no adequate remedy at law.

## COUNT II

### Against Individual Defendants for Unjust Enrichment

74.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

75.     By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Gulfport.

76.     Plaintiff, as a shareholder and a representative of Gulfport, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits—including from any insider sales, benefits, and other

compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

77.     Plaintiff on behalf of Gulfport has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of Gulfport, demands judgment as follows:

A. Declaring that Plaintiff may maintain this action on behalf of Gulfport and that Plaintiff is an adequate representative of the Company;

B. Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Gulfport;

C. Determining and awarding to Gulfport the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest;

D. Directing Gulfport and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Gulfport and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action

as may be necessary to place before stockholders for a vote of the following corporate governance policies:

    i.   a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

    ii.   a provision to permit the stockholders of Gulfport to nominate at least four candidates for election to the Board; and

    iii.   a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

E.  Awarding Gulfport restitution from the Individual Defendants, and each of them;

F.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

G.  Granting such other and further relief as the Court may deem just and proper.

## **<u>JURY DEMAND</u>**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: June 22, 2020                    Respectfully submitted,

                                        **O'KELLY & ERNST, LLC**

                                        */s/ Ryan M. Ernst*
                                        Ryan M. Ernst (Bar No. 4788)
                                        824 N. Market Street, Ste. 1001A
                                        Wilmington, DE 19801
                                        Tel: (303) 778-4000
OF COUNSEL:                             Email: rernst@oelegal.com

**POMERANTZ LLP**                       *Counsel for Plaintiff Sam L. Carter*
Gustavo F. Bruckner
Samuel J. Adams
600 Third Avenue
New York, NY 10016
Tel: (212) 661-1100
Email: gfbruckner@pomlaw.com
        sjadams@pomlaw.com

Kip B. Shuman
**SHUMAN, GLENN & STECKER**
100 Pine Street, Ste. 1250
San Francisco, CA 94111
Tel: (303) 861-3003
Email: kip@shumanlawfirm.com

Rusty E. Glenn
**SHUMAN, GLENN & STECKER**
600 17th Street, Suite 2800 South
Denver, CO 80202
Tel: (303) 861-3003
Email: rusty@shumanlawfirm.com

Brett D. Stecker
**SHUMAN, GLENN & STECKER**
326 W. Lancaster Avenue
Ardmore, PA 19003

Tel: (303) 861-3003
Email: brett@shumanlawfirm.com